# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PERMA-LINER INDUSTRIES, LLC, ) <br> ) <br>               Plaintiff(s), ) <br> ) <br> V. ) <br> ) <br> GERALD D'HULSTER, ) <br> ) <br>               Defendant(s). ) <br> ) | C.A. No.: 1:20-CV-00409-UNA |

## DEFENDANT GERALD D'HULSTER'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS FIRST AMENDED COMPLAINT

**COMES NOW**, Defendant, GERALD D'HULSTER, ("D'HULSTER" or "Defendant") through undersigned counsel, and hereby files this Reply to Plaintiff's Opposition to Motion to Dismiss the First Amended complaint and in support thereof provides as follows:

## BACKGROUND

On May 22, 2020, Plaintiff filed their First Amended Complaint for Injunctive Relief and Damages. The Amended Complaint attempts to assert Four (4) Causes of Action, namely: (1) Breach of Contract; (2) Misappropriation of Trade Secrets; (3) Defend Trade Secrets Act; and (4) Tortious Interference with Prospective Business Relations. The Amended Complaint is replete with deficiencies and should be dismissed, as it fails to comply with pleading requirements, fails to state a claim for which relief may be granted, fails to include all necessary parties and potentially

1

violates anti-trust rules.  On June 19, 2020, Defendant filed a Motion to Dismiss Amended Verified Complaint for Injunctive Relief and Damages and Incorporated Memorandum of Law under *Federal Rules of Civil Procedure* 12(b)(6) and 12(b)(7). On July 6, 2020, Plaintiff filed its Opposition to Defendant's Motion to Dismiss ("Opposition").  Plaintiff's Opposition is a recitation of facts and a reassertion of their arguments, but it fails to address or rebut Defendant's asserted grounds for dismissal of its First Amended Complaint.

## **Applicable Law**

In its Opposition, Plaintiff again asserts that Delaware law should apply to all asserted causes of action, regardless of whether they sound in tort or contract.  Plaintiff fails to address the fact that the causes of action asserted in Counts II through IV, namely (2) Misappropriation of Trade Secrets; (3) Defend Trade Secrets Act; and (4) Tortious Interference with Prospective Business Relations, are tort based causes of action, none of which arise out of contract.

Simply because one contract between the parties has a Delaware choice of law provision does not automatically subject D'HULSTER to Delaware law for tort causes of action as well as contract causes of action.  Rather, the significant relationship test applies to determine the choice of law to be applied for tort claims. *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1099 n.3 (Fla. 1st DCA 1999)("Although appellants' breach-of-contract claims are, pursuant to their contracts, governed by New Jersey law, under Florida choice-of-law rules, their tort claims would likely be

governed by Florida law. *See Bishop v. Florida Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980)(adopting "significant relationships test" as Florida choice-of-law rule for torts)."). Similarly, Delaware likewise applies the "significant relationships" test for determining choice of law in tort claims. *Int'l Bus. Machs. Corp. v. Comdisco, Inc.*, C.A. No. 91-C-07-199, 1991 Del. Super. LEXIS 453, at *17 (Super. Ct. Dec. 4, 1991)("most significant relationship" test").

    The operative facts alleged in the Amended Complaint are directed to purported actions that took place in the State of Florida. Both the Plaintiff and Paramount have their principal place of business in Florida and D'HULSTER is a resident of the State of Florida. Moreover, as evident from a review of the assorted contracts between the parties, the relationship between the parties has been centered in Florida. If the Court finds in favor of Plaintiff, it affects the rights and liabilities of D'HULSTER in Florida and potentially impacts his ability to work in the State of Florida. The only connection with Delaware is that it is the State of Incorporation for Plaintiff. Therefore, Florida law should apply to the tort claims asserted by Plaintiff. In fact, D'HULSTER asserts that all counts in this matter are governed by Florida Law (even the purported breach of contract action which potentially encompasses multiple contracts, some of which contain specific Florida choice of law provisions). However, without waiving that position, D'HULSTER will cite some Delaware law throughout this motion.

## **Standard for a Motion to Dismiss**

Plaintiff spends a large portion of its Opposition recanting and restating the facts and argument set forth in the First Amended Complaint in an apparent attempt to somehow convince the Court that it has asserted valid causes of action against D'HULSTER. However, a Motion to Dismiss and an Opposition thereto should not have a factual section as the argument is based solely on the four corners of the Complaint. Restating the facts in an Opposition to try to bolster its position while failing to address the actual legal arguments is a disingenuous attempt to circumvent the pleading requirements. The purpose of a Motion to Dismiss is not to have the Court weigh the facts and credibility of the parties, but rather to determine whether based on the four corners of the Complaint, Plaintiff has stated a cause of action. For that reason, Defendant's Motion to Dismiss did not contain a factual section that attempted to rebut the allegations in the First Amended Complaint.

Plaintiff specifically comments on page 12 and throughout the Opposition, that Defendant did not raise a challenge regarding the validity of the Restrictive Covenants. However, attacking the validity of the contractual provisions is not procedurally proper in a Motion to Dismiss. Rather, under the standard for a Motion to Dismiss, all facts as alleged are accepted as true. *Spigot, Inc. v. Hoggatt*, No. 2:18-cv-764-FtM-29NPM, 2020 U.S. Dist. LEXIS 71973, at *6-7 (M.D. Fla. Apr. 23, 2020).

Therefore, attacking the potentially applicable contractual provisions on a factual basis at this procedural stage is not appropriate. Defendant has previously expressed

his position regarding the unenforceability and invalidity of the various contractual provisions and hereby reserves his right to continue to assert such position in the appropriate procedural manner.

### Plaintiff's First Amended Complaint is a Shotgun Pleading and Fails to State a Cause of Action in either Contract or Tort

Plaintiff's First Amended Complaint is a prototypical, quintessential shot gun pleading. Every count begins with the same allegation: "Plaintiff incorporates by reference the preceding paragraphs as if set forth fully herein." First Amended Complaint, ¶¶ 96, 106, 119 and 133. Importantly, Plaintiff also incorporates all potentially applicable contracts and provisions into one count with no attempt to point to a particular contract and provision that it claims D'HULSTER allegedly breached. Each of these issues on their own render the First Amended Complaint a shotgun pleading, but together these issues conflate to create the perfect storm of confusion.

Plaintiff attempts to make a vacuous argument that its First Amended Complaint does not qualify as a shotgun pleading because there is only one Plaintiff and one Defendant. Opposition pages 9-11. Plaintiff cites to the case *Adger v. Carney*, No. 18-2048-LPS, 2020 U.S. Dist. LEXIS 52533 (D. Del. Mar. 26, 2020) in support of its limited definition of a shotgun pleading. Plaintiff takes one quote in isolation and attempts to use it to convince the Court that a shotgun pleading can only occur when it is asserted against multiple Defendants. However, it is axiomatic that a shotgun pleading is a pleading that "contains several counts, each one incorporating by reference

the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). In fact, the case cited within *Adger* confirm this definition of a shotgun pleading. *Litwak v. Tomko*, No. 3:16-CV-00446, 2018 U.S. Dist. LEXIS 74773, at *13 (M.D. Pa. Mar. 19, 2018)("contains multiple counts where each count adopts the allegations of all preceding counts.").

However, it is interesting to note, that Plaintiff's First Amended Complaint even violates the definition of a shotgun pleading asserted by Plaintiff. Throughout the entire First Amended Complaint, Plaintiff alleges actions taken by a "Paramount Representative," not actions taken by the Defendant D'HULSTER. *See, e.g.* First Amended Complaint ¶¶ 65, 66, 67, 72, 73. Then Plaintiff proceeds to incorporate all proceeding paragraphs into every count while failing to specify which alleged bad actions it is actually attributing to D'HULSTER as opposed to conduct attributed to "Paramount Representatives." Plaintiff cites multiple different contracts in their First Amended Complaint along with a plethora of factual assertions, many of which are attributed to the generic and theoretical "Paramount Representatives." However, Plaintiff only asserts one breach of contract count against D'HULSTER. Plaintiff overtly fails to identify which contract(s) were the operable agreement, which contract(s) were allegedly breached, which provision(s) within the applicable contract

6

were allegedly breached and which specific actions are being attributed to D'HULSTER.

Instead, Plaintiff makes the broad general allegation in Count I, that D'HULSTER has breached "the Restrictive Covenants." First Amended Complaint, First Claim for Relief, Breach of Contract ¶¶ 97 to 105.  The First Amended Complaint does not identify or define specifically what it is referring to as the "Restrictive Covenants." Plaintiff simply throwing all potential agreements up in the air and making the broad allegation that D'HULSTER breached "the Restrictive Covenants" is exiguous to assert a legally sufficient cause of action.  As noted by the Court cited by Plaintiff, this type of pleading fails to "give defendant[] notice of the claims brought against [him] and the grounds upon which each claim rests."  *Adger v. Carney,* No. 18-2048-LPS, 2020 U.S. Dist. LEXIS 52533, at *16-17 (D. Del. Mar. 26, 2020).  Moreover and also importantly, Plaintiff incorporates all factual assertions in every count, many of which do not even mention action taken by D'HULSTER but instead reference a generic "Paramount Representative."

Accordingly, Plaintiff fails to state a cause of action and the first claim for relief and the First Amended Complaint as a whole, should be dismissed for failure to state a cause of action.

## Plaintiff Fails to State a Cause of Action for Misappropriation
## of Trade Secrets under either State or Federal Law

Similarly, Plaintiff misses the point in Defendant's Motion to Dismiss the Misappropriation of Trade Secrets and Defense of Trade Secrets causes of action. In order to state a claim for misappropriation of a trade secret, a plaintiff must allege that (1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy; and (2) the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it." *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001).

Client and Vendor contact information, without more, is not a trade secret. *See Simplexgrinnel, L.P. v. Ghiran*, No. 2:07-cv-456-FtM-29DNF, 2008 U.S. Dist. LEXIS 57368, 2008 WL 2704421, at *2 (M.D. Fla. July 9, 2008) (explaining customer lists are only trade secrets where they are confidential and a product of great expense and effort). Customer lists, pricing and vendor and supplier information are not trade secrets if they are publicly available. Such information is considered potential trade secrets if and only if, they are covertly maintained by the company as trade secrets. *See, e.g., Zachman v. Real Time Cloud Servs., LLC,* No. 9729-VCG, 2020 Del. Ch. LEXIS 115, at *39 (Ch. Mar. 31, 2020)("the trial record is bereft of evidence that Real Time Data's customer lists were maintained as trade secrets."); *Prov Int'l, Inc. v. Rubens Dalle Lucca*, No. 8:19-cv-978-T-23AAS, 2019 U.S. Dist.

8

LEXIS 187060, at *8 (M.D. Fla. Oct. 29, 2019)(the complaint must "describe the subject matter of the trade secret with sufficient particularity to separate [the trade secret] from matters of general knowledge in the trade").

In the First Amended Complaint, Plaintiff fails to allege that the information it claims is a trade secret is not generally known to the public and that it took steps to prevent the disclosure of the information. Thus, Plaintiff did not provide sufficient allegations to establish that the alleged customer lists, training materials, pricing information, vendor and supplier contacts and proprietary processes qualify as trade secrets. Simply labeling it as such does not meet the pleading requirements and does not automatically render such information a trade secret. While not relevant to a Motion to Dismiss, it is interesting to note that Plaintiff's own web site contains client reviews that do not redact client names.

### Plaintiff has Failed to Allege a Valid Cause of Action for Tortious Interference with Prospective Business Relationships

In Count IV, Plaintiff essentially alleges D'HULSTER tortiously interfered with Plaintiff's prospective business relationships. However, Plaintiff has failed to plead facts sufficient to survive dismissal. Competition in the free market does not amount to tortious interference. To properly assert claims for intentional interference with prospective business relationships, plaintiffs are also required to plead "a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered."

*See ISS Cleaning Serv.'s Group, Inc. v. Cosby*, 745 So.2d 460, 462 (Fla. 4th DCA 1999). Again, due to the shotgun nature of Plaintiff's First Amended Complaint it is difficult to decipher which allegations are intended to support this purported cause of action. Plaintiff pleads no facts regarding what type of contracts or agreements Plaintiff maintained with its vendors and/or customers; whether any expectation of continued business existed; whether D'HULSTER possessed independent business relationships with Plaintiff's vendors or customers; any industry standards regarding vendors, customers and competitors or the nature of the specific information used by D'HULSTER to allegedly interfere. Instead, Plaintiff's relationship with vendors and customers appear to be uncertain or speculative. Any relationship referenced in the First Amended Complaint appears to be an at will relationship, meaning that these parties are not bound to Plaintiff and are free to do business with anyone they like. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994) ("[t]he mere hope that some … past customers may choose to buy again cannot be the basis for a tortious interference claim"). A contract terminable 'at will' cannot be the subject of tortious interference where said interference is lawful competition." *Adler Consulting Corp. v. Executive Life Ins. Co.*, 483 So.2d 501, 502 (Fla. 3d DCA 1986). "This is so because when a contract is terminable at will, there is only an expectancy that the relationship will continue. In such a situation, a competitor has a privilege of interference in order to acquire the business for himself." *Greenberg v. Mount Sinai Med. Ctr. of Greater Miami, Inc.*, 629 So.2d 252, 255 (Fla. 3d DCA 1993); *Advantage*

10

*Digital Systems, Inc. v. Digital Imaging Services, Inc.*, 870 So.2d 111, 116 (Fla. 2d DCA 2003) ("Competition for business by a competitor is not actionable, even if intentional, unless the competitor is attempting to induce a customer to breach a contract that is not terminable at will."). The relationships referenced in Plaintiff's First Amended Complaint do not appear to even be contractually based, but instead where just potential relationships, some of which were simply in the negotiations stage at the time in question. A competitor is not an outsider and competition in the marketplace is not improper interference. Rather it is part of the basis for the competitive economy in compliance with antitrust laws. Plaintiff fails to allege any actual actionable damage. Moreover, the paragraphs that do appear to form the basis for Count IV generally allege actions by "a Paramount Representative." *See, e.g.* ¶¶ 65, 66, 67, 72, 73. Plaintiff has failed to allege a legally sufficient cause of action for interference with a prospective business relationship and therefore Court IV should be dismissed.

## Failure to Join an Indispensable Party

Plaintiff again misses the mark in its Opposition. As noted in the Opposition, the Plaintiff alleges that the restrictive covenants at issue prohibit D'HULSTER from taking certain actions. Opposition, page 20. However, in the First Amended Complaint, Plaintiff repeatedly refers to actions taken by generic unnamed "Paramount Representatives." *See* Motion to Dismiss ¶¶ 69 to 72 for specific citations. Those actions are not alleged to be taken by, on behalf of, or at the direction of D'HULSTER. As such, those allegations cannot support a claim against D'HULSTER.

## Florida Antitrust Law

The non-compete agreements potentially violate antitrust laws as being anti-competitive, unreasonably restrictive, unreasonably limiting D'HULSTER in Plaintiff's market, and not reasonably necessary to the function and/or efficient operation of Plaintiff's business. It does not serve any pro-competitive purpose. Florida antitrust law is clear: "Every contract, combination, or conspiracy in restraint of trade or commerce in this state is unlawful." Fla. Stat. § 542.18; *see also* 15 U.S.C. § 1 ("Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal."). Moreover, the Florida Deceptive and Unfair Trade Practices Act states: "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. § 501.204 (1). Florida courts have held that when an agreement or covenant's intent is not to protect any legitimate business interest but rather to exclude a business from competing with another business, it is an unlawful agreement under anti-trust principles. *See e.g. Flatley v. Forbes*, 483 So.2d 483 (Fla. 2d DCA 1986) (sole purpose of a covenant was to exclude one business from competing with another business and was therefore in violation of Florida law.)

Florida's restrictive covenant statute is a narrow exception to the antitrust laws. Florida law does not prohibit ordinary competition simply because any competition by a former employee could injure the business of the employer. *Passalacqua v. Naviant,*

*Inc.*, 844 So. 2d 792, 795 (Fla. 4th DCA 2003). As such, an employer cannot, by contract, restrain ordinary competition. *Id.* "In order for an employer to be entitled to protection, there must be special facts present over and above ordinary competition. These special facts must be such that without the covenant not to compete the employee would gain an unfair advantage in future competition with the employer." *Id.* While Florida's noncompete statute is an exception to Florida's antitrust law; there is no statutory exception for the common law of any other state. Had the Florida legislature wished to include such an exception, it could have. Plaintiff has failed to demonstrate the existence of any legitimate business interest to protect by way of the agreement. Plaintiff's only purpose for filing this action is to attempt to restrict competition with Defendants by prohibiting Defendants from contacting customers who were D"HULSTER's contacts before Plaintiff or are found through public websites. The Court should dismiss Plaintiff's First Amended Complaint (and deny Plaintiff's Motion for Injunction); otherwise it would be promoting anticompetitive behavior.

**WHEREFORE**, based on the foregoing Defendant GERALD D'HULSTER, respectfully requests that this Honorable Court issue an Order Denying Plaintiff's Opposition to Defendant's Motion to dismiss the First Amended Complaint in its entirety and awarding such further relief as the Court deems appropriate.

DATED: July 13, 2020                           Respectfully submitted,

**MOORE AND RUTT, P.A.**

 /s/ Scott G. Wilcox
Scott G. Wilcox, Esq. (DE ID #3882)
The Mill
1007 North Orange Street, Suite 446
Wilmington, DE 19801
Telephone (302) 463-7537
swilcox@mooreandrutt.com


**LAW OFFICE OF ROBERT ECKARD
& ASSOCIATES, P.A.**

_____
Robert D. Eckard, B.C.S.
(Admitted Pro Hac Vice)
FBN: 0162655
3110 Alternate US 19 N
Palm Harbor, FL 34683
Telephone: (727) 772-1941
Facsimile: (727) 771-7940
Robert@RobertEckardLaw.com

*Counsel for Defendant Gerald D'Hulster*

# CERTIFICATE OF SERVICE

I, Scott G. Wilcox, Esquire hereby certify that on this 13th day of July 2020, a true and correct copy of Defendant Gerald D'Hulster's Reply Brief in Support of His Motion to Dismiss First Amended Complaint was served via CM/ECF E-Filing upon:

Scott A. Holt
Alberto E. Chavez
Young Conaway Stargalt & Taylor, LLP
1000 North King Street
Wilmington, DE 19801
sholt@ycst.com
achavez@ycst.com

   /s/ Scott G. Wilcox
Scott G. Wilcox, Esq. (DE ID #3882)