### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

PERMA-LINER INDUSTRIES, LLC,

       Plaintiff,

v.                              Case No. 8:21-cv-715-CEH-TGW

GERALD D'HULSTER,

       Defendant.

_____/

### REPORT AND RECOMMENDATION

      Plaintiff, Perma-Liner Industries, LLC, alleges that the defendant, Gerald D'Hulster, the company's founder and former president, is competing against it in violation of restrictive covenants contained in four contracts between the parties. The plaintiff also alleges that the defendant misappropriated trade secrets and tortiously interfered with the plaintiff's prospective business relationships.

      The defendant has filed a Motion to Dismiss the Second Amended Verified Complaint, arguing that the plaintiff's tort allegations fail to state a claim upon which relief may be granted. Additionally, the defendant contends that the lawsuit must be dismissed for failure to join an indispensable party. The motion was referred to me.

Viewing the Second Amended Complaint in the light most favorable to the plaintiff, the plaintiff's allegations are sufficient to state a cognizable claim for misappropriation of trade secrets. Furthermore, the defendant's claim that dismissal of the Second Amended Complaint is warranted for failure to join an indispensable party is impermissibly conclusory and meritless. On the other hand, the tortious interference claim is not adequately pled. Therefore, I recommend that the Motion to Dismiss the Second Amended Complaint (Doc. 76) be granted to the extent that the tortious interference with prospective business relationships claim (count VII) be dismissed without prejudice to the plaintiff's amendment of that claim. In all other respects, I recommend that the motion be denied.

I.

Plaintiff Perma-Liner Industries, LLC ("Perma-Liner") is a Delaware limited liability company with a principal operating address in Clearwater, Florida. Since its founding more than twenty years ago, Perma-Liner has developed systems, achieved patents, and manufactured state of the art technology to rehabilitate existing sewer systems without excavation, in what is known as the "cured-in-place-pipe" or "CIPP" industry (Doc. 71, ¶13).

2

Defendant Gerald D'Hulster, a resident of Pinellas County, founded Perma-Liner Industries, Inc., in 1999 (id., ¶¶7, 17). In December 2012, he sold substantially all of Perma-Liner's assets to Perma-Liner Holdings, LLC, [1] but remained employed with Perma-Liner until 2019, as its president and in other high ranking positions (id., ¶¶19).

Between 2012 and 2019, the parties entered into four contracts containing restrictive covenants in which the defendant agreed not to compete with the plaintiff, solicit its customers or suppliers, or disclose the plaintiff's confidential information and trade secrets (see Docs. 71-1, 71-2, 71-3, 71-4).

The defendant's employment with the plaintiff ended in April 2019. The plaintiff alleges that, months later, the defendant formed a competing company, Paramount Pipe Lining Products, LLC ("Paramount"), and became its CEO, in breach of the restrictive covenants.

Furthermore, the plaintiff alleges, the defendant began soliciting the plaintiff's customers, vendors, and employees, and is using the plaintiff's confidential information and trade secrets, including customer lists and intimate knowledge of the plaintiff's business, pricing, and

---

[1]Perma-Liner Holdings subsequently changed its name to Perma-Liner Industries, LLC, the plaintiff in this case (Doc. 71, ¶18).

3

operations, to compete with it (see Doc. 71, ¶¶61–84). The defendant allegedly has caused the plaintiff to lose customers and sales revenues due to forced discounting. Moreover, the plaintiff contends, the defendant is disclosing confidential and trade secret information he learned with the plaintiff to create Paramount products that directly overlap with product lines that were developed by the plaintiff through extensive research and development (id., ¶¶81–82).

The defendant essentially denies any connection to Paramount, or that he violated the restrictive covenants (Doc. 89-1, ¶¶24–32).

On March 17, 2020, the plaintiff filed a lawsuit against the defendant in the Delaware Court of Chancery (Doc. 71, ¶92). On March 26, 2021, the case was transferred to this court (Docs. 46, 47). The plaintiff's Second Amended Verified Complaint (SAC) contains seven claims: breach of contract (counts one through four), misappropriation of trade secrets (count five), the violation of the Defend Trade Secrets Act (count six), and tortious interference with prospective business relations (count seven) (Doc. 71).

The defendant argues in his Motion to Dismiss that the tort claims—counts V, VI and VII—are not cognizable (Doc. 76). Additionally, he contends that the SAC should be dismissed for failure to join an

4

indispensable party (id.). The plaintiff has filed an opposition memorandum (Doc. 82). The motion was referred to me (Doc. 78).

## II.

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted). Thus, a complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Furthermore, on a Rule 12(b)(6) motion to dismiss, the pleadings are construed broadly, and the allegations in the complaint are viewed in the light most favorable to the plaintiff. Watts v. Florida International University, 495 F.3d 1289, 1295 (11th Cir. 2007).

## III.

The defendant seeks dismissal of the claims that he misappropriated trade secrets. Count V, titled "Misappropriation of Trade Secrets," is analyzed as a violation of Florida's Uniform Trade Secrets Act

5

("FUTSA"), codified at Chapter 688 of Florida Statutes, and count VI alleges the violation of the Defend Trade Secrets Act ("DTSA"), codified at 18 U.S.C. 1836, et seq.

Since the substantive standards for DTSA are similar to FUTSA, the parties agree that the FUTSA analysis also applies to both claims (Doc. 76, p. 12; Doc. 82, p. 18, n.5). [2] See Compulife Software Inc. v. Newman, 959 F.3d 1288, 1311 n.13 (11th Cir. 2020) ("DTSA creates a federal cause of action that largely mirrors FUTSA.").

"The term 'trade secret' is one of the most elusive and difficult concepts in the law to define." Furmanite America, Inc. v. T.D. Williamson, Inc., 506 F. Supp. 2d 1134, 1141 (M.D. Fla. 2007) (citation omitted).

> To prove a claim under the Florida Uniform Trade Secrets Act (FUTSA), [the plaintiff] "must demonstrate that (1) it possessed a trade secret and (2) the secret was misappropriated." Yellowfin Yachts, Inc. v. Barker Boatworks, LLC, 898 F.3d 1279, 1297 (11th Cir. 2018) …. Florida law defines a trade secret as information ... that: (a) [d]erives independent economic value ... from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Fla. Stat. § 688.002(4).

---

[2]Page numbers refer to the pages assigned by the CM/ECF docketing system.

Compulife Software Inc. v. Newman, supra, 959 F.3d at 1301–1311. In this regard,

> Florida courts adjudicating FUTSA cases have said that the "plaintiff is required to identify with reasonable particularity the trade secrets at issue before proceeding with discovery." ... However, to satisfy this requirement at the dismissal stage in federal court, the plaintiff need only allege sufficient facts to plausibly show a trade secret was involved and to give the defendant notice of the material it claims constituted a trade secret.

DynCorp International v. AAR Airlift Group, Inc., 664 Fed. Appx. 844, 848 (11th Cir. 2016) (citations omitted). Therefore, in federal court, "whether something is a trade secret is a question typically 'resolved by a fact finder after full presentation of evidence from each side.'" Yellowfin Yachts, Inc. v. Barker Boatworks, LLC, 898 F.3d 1279, 1298–99 (11th Cir. 2018) (citation omitted).

Moreover, while not defined in the statute, the bar for what counts as "use" of a trade secret is generally low. See Penalty Kick Management v. Coca Cola Co., 318 F.3d 1284, 1292 (11th Cir. 2003) (citation omitted) ("[A]ny exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a 'use.'"); Compulife Software Inc. v. Newman, supra, 959 F.3d at 1313.

The defendant argues that the trade secret claims should be dismissed because the plaintiff fails to identify the alleged trade secrets and instead "formulaically lists off categories of information and lumps trade secret and confidential information together" (Doc. 76, pp. 14, 15). The defendant cites <u>Del Monte Fresh Produce Co.</u> v. <u>Dole Food Co. Inc.</u>, 148 F. Supp. 2d 1322, 1326 (S.D. Fla. 2001), for the proposition that the plaintiff's allegations are impermissibly conclusory. However, the issue in that case concerned the need for specificity in applying a discovery rule that protects trade secrets; it did not consider the adequacy of a trade secret claim on a motion to dismiss.

In all events, the plaintiff sufficiently specifies alleged trade secrets. Thus, it asserts that its master customer lists and pricing specifications are trade secrets that it has expended substantial effort in developing and maintaining, and were subject to non-disclosure and confidentiality agreements (which the defendant agreed to abide by) (see Doc. 71, ¶¶141, 144, 146, 147).

This type of information can be a trade secret. See <u>SMS Audio, LLC</u> v. <u>Belson</u>, 9:16-cv-81308, 2016 WL 8739764 at *3 (S.D. Fla. Aug. 16, 2016) (Customer lists can constitute trade secrets when they are not just a compilation of information commonly available to the public.); <u>VAS Aero</u>

Servs., LLC v. Arroyo, 860 F. Supp. 2d 1349, 1359 (S.D. Fla. 2012) (Documents and discussions "containing strategic marketing plans and pricing information have been held to constitute trade secrets under Florida law."); Beach 2 Bay Aerial Billboard Advertising, LLC v. Florida Beach Advertising, LLC, No. 8:17-cv-1049-T-27TBM, 2017 WL 9510592 at *2 (M.D. Fla. Oct. 31, 2017) (client records and pricing records can be trade secrets).

Furthermore, the plaintiff alleges that the defendant misappropriated the alleged trade secret information by using it to establish a competing business, poach the plaintiff's customers and suppliers, and undercut the plaintiff's pricing, resulting in a loss of sales and revenues and erosion of its position in the CIPP market (see Doc. 71, ¶¶61, 64, 69–72, 140, 144, 149). The SAC alleges, in particular, that the defendant has "target[ed] customers on Perma-Liner's customer lists whom [the defendant] knows to have pricing sensitivity based on his intimate knowledge of Perma-Liner's sales process," which has forced the plaintiff to discount its products to retain customers (id., ¶¶69, 149).

The defendant argues that "[c]ustomer lists, product images, marketing materials, etc. do NOT automatically qualify as trade secrets just because Plaintiff says so..." (Doc. 76, p. 15, ¶45) (emphasis in original).

9

However, the court is not determining at this juncture whether this information qualifies as a trade secret. Thus,

> at the dismissal stage in federal court, the plaintiff need only allege sufficient facts to plausibly show a trade secret was involved and to give the defendant notice of the material it claims constituted a trade secret. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); accord AAR Mfg., 98 So.3d at 188 (rejecting the idea that the court must make a threshold finding as to the existence of a trade secret to proceed to discovery).

DynCorp International v. AAR Airlift Group, Inc., supra, 664 Fed. Appx. at 848.

Here, the plaintiff has "identif[ied] facts that are suggestive enough to render [the misappropriation claim] plausible." See Rivell v. Private Health Care Systems, Inc., 520 F.3d 1308, 1310 (11th Cir. 2008). Therefore, "[w]hether the[se] trade secrets ... are actually secret is a matter for the finder of fact." Developmental Technologies, LLC v. Mitsui Chemicals, Inc., No. 8:18-cv-1582-T-27TGW, 2019 WL 1598808 at *3 (M.D. Fla. Apr. 15, 2019).

Additionally, the SAC alleges that the defendant misappropriated the plaintiff's product information, as reflected in a catalog of Paramount products that allegedly overlap with the plaintiff's product lines that it developed through extensive research and development (Doc.

10

71, ¶¶3, 141–144, 158).  This type of information may also qualify as a trade secret.  See Innovative Strategic Communications, LLC v. Viropharma, Inc., No. 8:11-cv-1838, 2012 WL 3156587 at *13 (M.D. Fla. Aug. 3, 2012) (denying motion to dismiss where Plaintiff described the misappropriated trade secrets as "information, formulas, patterns, compilations, programs, devices, methods, techniques, ... [and] processes").   Furthermore, the plaintiff alleges that it made efforts to protect the secrecy of this information by contractually requiring employees to maintain its confidentiality, as it did with the defendant (Doc. 71, ¶146).  See Whertec, Inc. v. Salmon, No. 3:20-cv-1254-BJD-PDB, 2021 WL 3555676 at *4 (M.D. Fla. Apr. 28, 2021).

Moreover, the plaintiff alleges that the defendant has gained economic value and an unfair competitive advantage from this information by being able to "quickly develop competing business offerings while avoiding the substantial costs of researching, developing, patenting and/or acquiring distinct products, technology, services ... "(Doc. 71, ¶148, see also id., ¶82).

In sum, drawing all reasonable inferences in favor of the plaintiff, the SAC allegations are sufficient to plausibly show that a trade secret was misappropriated and, therefore, state a cognizable claim under

11

FUTSA and DUTA.   Accordingly, I recommend the motion to dismiss Counts V and VI be denied.

## IV.

The defendant also argues the plaintiff's claim that he interfered with a prospective business relationship is legally insufficient (Doc. 76, pp. 16–22).  The plaintiff disputes this contention (Doc. 82).

> Under Florida law, "[t]he elements of tortious interference with a business relationship are '(1) the existence of a business relationship[;] (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.' " Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So.2d 812, 814 (Fla.1994) (alteration adopted) (quoting Tamiami Trail Tours, Inc. v. Cotton, 463 So.2d 1126, 1127 (Fla. 1985) (per curiam)).

Duty Free Americas, Inc. v. Estee Lauder Companies, Inc., 797 F.3d 1248, 1279 (11th Cir. 2015).

In order to establish "a business relationship … the plaintiff need not allege the existence of an enforceable contract"; the plaintiff can prevail if there is an understanding between the parties that the agreement would have been completed had the defendant not interfered.  Id. However, "speculative hope of future business is not sufficient to sustain a claim for interference with a business relationship." Zike, LLC v. Catalfumo, No. 12-

12

80236-CIV, 2013 WL 12080225 at *6 (S.D. Fla. Feb. 22, 2013).

With respect to the third element, the defendant's alleged intentional and unjustified interference with the business relationship, the plaintiff must specify the acts constituting the unjustified interference. See Duty Free Americas, Inc. v. Estee Lauder Companies, Inc., supra, 797 F.3d at 1280–81 ("[W]hen plaintiffs have failed to adequately allege [the] improper methods [of interference], we have followed the Florida courts and dismissed these claims."). Thus, a conclusory allegation that a defendant acted without justification is insufficient.

Importantly, Florida recognizes a "privilege of interference." Wackenhut Corp. v. Maimone, 389 So.2d 656, 658 (Fla. App. 1980). This means that, "[i]f a competitor proves that the interference was lawful competition he will not be found to have committed the tort." Greenberg v. Mount Sinai Medical Center of Greater Miami, Inc., 629 So. 2d 252, 255 (Fla. App. 1993); International Sales & Service, Inc. v. Austral Insulated Products, Inc., 262 F.3d 1152, 1158 (11th Cir. 2001) ("Florida law recognizes the right of competitors to compete for customers.").

The plaintiff, in arguing that its claim is legally sufficient, emphasizes its allegations that the defendant "used information obtained during his employment with [the plaintiff] and intentionally interfered with

13

Plaintiff's business relationships with its customers, vendors, and suppliers using unfair and improper means" (Doc. 82, p. 14, <u>citing</u> Doc. 71, ¶¶168, 170). However, as the defendant argues (Doc. 76, p. 19), this allegation is insufficient because it does not identify the person with whom the plaintiff had the business relationship, or the substance of the agreement which would have likely been completed absent the defendant's interference. <u>See</u> <u>Ferguson Transportation, Inc.</u> v. <u>North American Van Lines, Inc.</u>, 687 So. 2d 821, 822 (Fla. 1996) (The plaintiff must prove a business relationship with identifiable customers.); <u>Zike, LLC</u> v. <u>Catalfumo</u>, <u>supra</u>, 2013 WL 12080225 at *6 ("[T]he relationship must be evidenced by an actual and identifiable understanding or agreement between the parties that would have been completed had defendant not interfered.").

The plaintiff argues further that it has specified a prospective business relationship with which the defendant wrongfully interfered (Doc. 82, pp. 21–22). In this regard, the plaintiff states:

> Perma-Liner alleges a business expectancy with a Finnish supplier of a spray epoxy pipe coating[], with which Perma-Liner had reached an agreement in principle in March and April 2020. Perma-Liner further alleges that, as late as April 14, 2020, it exchanged drafts of transaction documentation, worked on financing arrangements and scheduled training to bring the product to the United States market. Perma-Liner also alleges that, on April 23, 2020, the supplier

14

> terminated its business relationship with Plaintiff after D'Hulster interfered and reached a competing agreement, causing losses to Perma-Liner of approximately $300,000 in sales to customers who had expressed interest in purchasing the product from Plaintiff.

(Id., p. 21; citing Doc. 71, ¶¶78, 79, 171) (citations omitted).

The defendant aptly responds that this allegation is insufficient because "competition in the free market does not amount to tortious interference," and the plaintiff does not identify the nature of the interference which shows that his actions were unjustified (Doc. 76, p. 18). See Duty Free Americas, Inc. v. Estee Lauder Companies, Inc., supra, 797 F.3d at 1282 (Florida law does not prohibit free competition unless the "the methods employed were … improper."); International Sales & Service, Inc. v. Austral Insulated Products, Inc., supra, 262 F.3d at 1158 ("Florida law recognizes the right of competitors to compete for customers."). In fact, the plaintiff concedes that it does not know why the Finnish company abandoned its agreement with the plaintiff, much less have knowledge of the defendant's purported improper methods which led to that decision (Doc. 82, p. 22). Therefore, construing these allegations in the light most favorable to the plaintiff, they are insufficient to constitute tortious interference with a business relationship in violation of Florida law. See Ashcroft v. Iqbal,

supra, 556 U.S. at 678 (The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully.").

However, the plaintiff should be given one more opportunity to amend this claim, especially considering that the plaintiff indicates in its response that the defendant's solicitation of the Finnish company was unjustified because it violated the parties' restrictive covenants (see Doc. 82, p. 15 (The "tortious interference claim is not based on misappropriation of trade secrets.  It is based on [the defendant's] tortious solicitation of [the plaintiff's] customers, vendors, and suppliers."); see also id., p. 21, n.6)).

If that is the case, the plaintiff needs to expressly state in its pleading that a breach of the restrictive covenants is the basis for its allegation of tortious interference with the Finnish epoxy producer (or any other person), so that the defendant has a fair opportunity to respond to that contention.

In sum, the plaintiff's tortious interference claim is insufficient because its allegation that the defendant interfered with the plaintiff's business relationships with customers, vendors, and suppliers is too conclusory, and the plaintiff's allegation that the defendant interfered with an expected agreement with the Finnish epoxy producer does not state with the requisite specificity the basis for finding the interference "unjustified."

Accordingly, I recommend that this count be dismissed, with leave to amend this claim to remedy these deficiencies.

V.

The defendant also argues that the plaintiff's tortious interference with prospective business relations claim should be dismissed because FUTSA "preempts common law claims that are based on misappropriation of trade secrets" and the "allegations in support of [the plaintiff's] Tortious Interference with Prospective Business Relations claim are based on the same allegations as its Misappropriation of Trade Secrets claim" (Doc. 76, pp. 8, 11).

FUTSA "displace[s] conflicting tort, restitutory, and other law[s] of [the state of Florida] providing civil remedies for misappropriation of a trade secret." Fla. Stat. § 688.008(1). "Thus, as a general proposition other torts involving the same underlying factual allegations as a claim for trade secret misappropriation will be preempted by FUTSA." New Lenox Industries, Inc. v. Fenton, 510 F. Supp. 2d 893, 908 & n.65 (M.D. Fla. 2007). FUTSA does not, however, affect "[o]ther civil remedies that are not based upon misappropriation of a trade secret." Fla. Stat. § 688.008(2)(b).

The parties disagree whether a tortious interference claim based upon the misappropriation of confidential information, i.e., proprietary

17

information that does not rise to the level of a "trade secret," is pre-empted under § 688.008(2)(b) (<u>see</u> Doc. 76, pp. 9–11).  As the defendant notes, several courts within the Middle District of Florida have interpreted FUTSA's pre-emption provision to pre-empt claims based on misappropriation of confidential information.  <u>See</u>, <u>e.g.</u>, <u>American Registry, LLC</u> v. <u>Hanaw</u>, No. 2:13-cv-352-FTM-29CM; 2014 WL 12606501 at *5 (M.D. Fla. 2014).  However, the parties acknowledge that Florida courts have not addressed this issue (Doc. 76, p. 10; Doc. 82, pp. 14, 15).

Furthermore, the plaintiff argues, the court need not decide this issue because "[the defendant's alleged] theft of its confidential information is <u>not</u> a necessary element of [the plaintiff's] tortious interference count against [the defendant]," nor is its tortious interference claim based on misappropriation of trade secrets (Doc. 82, pp. 15, 17).  Rather, the plaintiff asserts, its tortious interference claim is based on the defendant's "tortious solicitation" of its customers and suppliers (<u>id.</u>, p. 15).  Thus, the plaintiff appears to assert that its tortious interference claim is based upon the defendant's breach of his restrictive covenants, and a tortious interference claim based upon the breach of a contract is not precluded under FUTSA.  <u>See</u> Fla. Stat. § 668.008(2)(b); <u>see</u> <u>ThinkLite LLC</u> v. <u>TLG Solutions, LLC</u>, No. 16-24417-CIV, 2017 WL 5972888 at *4 (S.D. Fla. Jan. 31, 2017)

("Because this claim is based on Defendants' contractual ... duties ... other than misappropriation of trade secrets, this claim is not preempted [by FUTSA].").

In sum, based on the plaintiff's responsive memorandum, the issue of whether FUTSA pre-empts claims based on misappropriation of confidential information appears moot. In all events, this pre-emption issue is not ripe for adjudication because, as indicated, the tortious interference claim should be re-pled to clarify the basis of the claim.

## VI.

Finally, the defendant contends, in a conclusory manner, that the SAC should be dismissed under Rule 12(b)(7), Fed.R.Civ.P., for failure to join an indispensable party. This argument is undeveloped and meritless.

Dismissal of an action pursuant to Fed.R.Civ.P. 12(b)(7), for failure to join a party under Fed.R.Civ.P. 19, is a "two-step inquiry." Molinos Valle Del Cibao v. Lama, 633 F.3d 1330, 1344 (11th Cir. 2011). First, a court must decide whether an absent party is required in the case under Rule 19(a). Id. If a court determines that an absent party does satisfy the Rule 19(a) criteria, i.e., that the person or entity is a required party, the court must order that party joined if its joinder is feasible. Focus on the Family v. Pinellas Suncoast Transit Authority, 344 F.3d 1263, 1279 (11th

Cir. 2003). If the absent party is not required, the litigation continues as pled. Id.

Furthermore, "[a] party is not necessary simply because joinder would be convenient, or because two claims share common facts." Raimbeault v. Accurate Machine & Tool, LLC, 302 F.R.D. 675, 682 (S.D. Fla. 2014) (citation omitted). Rather, an absent party is considered necessary if, in its absence, the court cannot accord complete relief among the existing parties to the action, or the nonparty claims an interest relating to the subject matter of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the nonparty's ability to protect the interest, or (ii) leave an existing party subject to a substantial risk of incurring inconsistent obligations because of the interest. Fed.R.Civ.P. 19(a)(1)(A)(B).

"The movant bears the initial burden of showing that the person who was not joined is necessary for a just adjudication." State Farm Mutual Automobile Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC, 278 F. Supp. 3d 1307, 1331 (S.D. Fla. 2017). The defendant has not met his burden.

The defendant summarily argues that "Paramount is arguabl[y] a required party as the alleged improper actions are being taken by

Paramount, not [the defendant] himself" (Doc. 76, p. 23).  However, the SAC is replete with allegations of wrongdoing by the defendant, individually, as well as in his role as owner and CEO of Paramount.[3]  Simply put, the defendant is the central figure in this litigation.

Furthermore, as the plaintiff points out, "[i]t has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit."  Temple v. Synthes Corp., Ltd., 498 U.S. 5, 7 (1990); Herpich v. Wallace, 430 F.2d 792, 817 (5th Cir. 1970) ("Rule 19 ... was not meant to unsettle the well-established authority to the effect that joint tortfeasors or coconspirators are not persons whose absence from a case will result in dismissal for non joinder."); Maletta v. Woodle, No. 2:20-cv-1004-JES-MRM, 2021 WL 2856632 at *2 (M.D. Fla. July 8, 2021).  Therefore, allegations of wrongdoing by Paramount are not sufficient, in themselves, to require joinder.

The defendant, moreover, does not explain which of the Rule 19(a)(1) factors makes Paramount a "necessary" party (see Doc. 76, p. 23).  This failure warrants rejection of this argument.  See State Farm Mutual

---

[3]The contention that the defendant committed tortious actions through his business does not absolve the defendant of liability, as it is clear that, "[u]nder Florida law, 'officers or agents of corporations may be individually liable in tort if they commit or participate in a tort ..." (Doc. 82, p. 23) quoting Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc., 436 Fed. Appx. 888, 890 (11th Cir. 2011).

<u>Automobile Ins. Co.</u> v. <u>Performance Orthopaedics & Neurosurgery, LLC,</u>
<u>supra</u>, 278 F. Supp. 3d at 1333.  Nonetheless, each of the Rule 19(a) factors
is addressed briefly.

The first criterion examines whether, in the nonparty's absence,
the court cannot accord complete relief among the existing parties to the
action.     Fed.R.Civ.P.  19(a)(1)(A).     The  "complete relief" factor  is
"concerned only with 'relief as between the persons already parties, not as
between a party and the absent person whose joinder is sought.'" <u>In re Ginn-</u>
<u>La St. Lucie Ltd., LLLP</u>, 420 B.R. 598, 603–04 (Bankr. S.D. Fla. 2009)
(citation omitted).    The plaintiff asserts that "complete relief can ... be
obtained against [the defendant] ..." (Doc. 82, p. 25).  The defendant does
not  argue  otherwise.     Therefore,  Rule  19(a)(1)(i)  does  not  compel
Paramount's joinder in this matter.

The second consideration is whether the nonparty "claims an
interest relating to the subject of the action," such that disposing of the action
in the nonparty's absence would have a prejudicial effect on that party's
ability to protect its interest, or leave an existing party subject to a substantial
risk of inconsistent obligations.  Rule 19(a)(1)(B)(i), (ii), Fed. R. Civ. P.

There has been no claim by Paramount of a legally protected
interest  relating  to  this  action,  and  the  defendant  cannot  claim  one  on

Paramount's behalf. See Rule 19(a)(1)(B) (requiring the nonparty claim an interest relating to the subject matter); United States v. Janke, No. 09-14044-CIV, 2009 WL 2525073 at *4 (S.D. Fla. Aug. 17, 2009) ("A prerequisite to the application of Rule 19(a)(1)(B) is that the absent party claim a legally protected interest in the subject matter of the ongoing suit."); ConnTech Development Co. v. Univ. of Connecticut Education Properties, Inc., 102 F.3d 677, 682 (2d Cir. 1996); State Farm Mutual Automobile Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC, supra, 278 F. Supp. 3d at 1332. Therefore, the defendant cannot invoke the necessary party rule set forth in Rule 19(a)(1)(B).

Moreover, there is no allegation that Paramount's absence would leave the existing parties at a substantial risk of incurring inconsistent obligations upon the court's disposition of the current action, nor is such a risk apparent. See Winn-Dixie Stores, Inc. v. Dolgencorp, LLC, 746 F.3d 1008, 1040 (11th Cir. 2014) (citation omitted) ("Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident.").

In sum, the defendant does not show that Paramount has claimed an interest, or sought to intervene to protect its rights, in this matter. Furthermore, the defendant has not alleged that inconsistent obligations

might result, or that complete relief cannot be accorded among the existing

parties.  Accordingly, the defendant has not met his burden pursuant to Rule

12(b)(7) of showing that Paramount is a required party under Rule 19(a),

F.R.Civ.P.

VII.

For the foregoing reasons, I recommend that the Motion to

Dismiss the Second Amended Complaint be granted only to the extent that

count VII, which alleges tortious interference with prospective business

relationships, be dismissed without prejudice to the plaintiff amending that

claim, and that it otherwise be denied.


Respectfully submitted,


THOMAS G. WILSON<br/>UNITED STATES MAGISTRATE JUDGE


DATED: FEBRUARY 9, 2022.

NOTICE TO PARTIES

The parties have fourteen days from the date they are served a
copy of this report to file written objections to this report's proposed findings
and recommendations or to seek an extension of the fourteen-day deadline
to file written objections.  28 U.S.C. 636(b)(1)(C).  Under 28 U.S.C.
636(b)(1), a party's failure to object to this report's proposed findings and
recommendations waives that party's right to challenge on appeal the district

24

court's order adopting this report's unobjected-to factual findings and legal conclusions.